O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LERAE C.,<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>        Defendant. | Case No. 5:19-cv-02100-KES<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**PROCEDURAL BACKGROUND**

In March 2016, Plaintiff Lerae C. ("Plaintiff") applied for social security disability benefits under Titles II and XVI alleging an onset date of February 1, 2012, and a last date insured of December 31, 2017. Administrative Record ("AR") 20, 159-73, 229. On September 21, 2018, the Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, testified along with a vocational expert ("VE"). AR 38-63. On October 29, 2018, the ALJ issued an unfavorable decision. AR 14-37.

The ALJ found that Plaintiff suffered from the severe impairments of "osteoarthritis of the bilateral hips, osteoarthritis of the left shoulder, left shoulder

adhesive capsulitis, and status post left shoulder arthroscopy surgery." AR 20. The ALJ found that Plaintiff's head tremors, anxiety disorder, and cervical and lumbar spine issues were non-severe impairments. AR 21-22.

The ALJ found that, despite her impairments, Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations:

> [T]he claimant can lift, carry, push, and pull up to 20 pounds occasionally and 10 [pounds] frequently, can stand and or walk for six hours with normal breaks, and can sit for six hours with normal breaks. Pushing and pulling with left upper extremity is limited to occasional, and overhead reaching with left upper extremity is limited to occasional, with no limitations with respect to use of right. The claimant can occasionally climb stairs and ramps, never climb ladders and scaffolds, can occasionally balance, occasionally kneel, occasionally stoop, occasionally crouch, and occasionally crawl. She should avoid exposure to unprotected heights and avoid workplace hazards. She should not operate a motor vehicle commercially. The claimant should avoid exposure to extreme cold and avoid exposure to heavy vibrations.

AR 24.

Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could do her past work as a receptionist. AR 29. The ALJ made an alternative finding that if restricted to "superficial interaction with people," then Plaintiff could work as a routing clerk and merchandise marker. AR 30, 59. The ALJ concluded that Plaintiff was not disabled. AR 31.

## II.
## ISSUE PRESENTED

This appeal presents the sole issue of whether the ALJ erred in discounting

Plaintiff's subjective symptom testimony. (Dkt. 21, Joint Stipulation ["JS"] at 5.)

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. (citation omitted). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

## III.
## SUMMARY OF THE MEDICAL EVIDENCE

A. **Plaintiff's Mental Health.**

Plaintiff completed some college coursework. AR 380. She worked as a receptionist for about five-and-a-half years. AR 45, 273. She reported that she stopped working in February 2012 due to anxiety. AR 45-46, 380. In February and March 2012, she received treatment from the Inland Psychiatric Medical Group. AR 340 (invoice for services without treating notes). After leaving her receptionist job, she looked for and obtained other work; she had earnings in 2014 that were not substantial gainful activity.[1] AR 20, 46.

In March 2016, Plaintiff requested a "psych referral" from her primary care physician. AR 348.

In April 2016, she underwent a psychiatric consultative examination with

---

[1] In her IFP application, Plaintiff declared she last worked in 2012. (Dkt. 3.)

3

Dr. Rezapour.  AR 379.  At that time, she was not receiving mental health treatment and her only medication was ibuprofen.  AR 380.  She appeared "very anxious," but she was "engaged and cooperative" and had "no difficulty interacting with the clinic staff."  AR 379, 382.  She could do "household chores, run errands, shopping, and cooking"; she rode the bus independently and pursued gardening as a hobby.  AR 379-80.  Dr. Rezapour diagnosed her with "generalized anxiety disorder" with a Global Assessment of Functioning ("GAF") score of 66.[2]  AR 382.

On September 5, 2016 (about two weeks after hip replacement surgery), Plaintiff met with Dr. Umugbe at Healthy and Happy America.  AR 613.  She rated her anxiety level as 10/10 but reported, "I don't like taking med not even aspirin and I am on no med for my hip now not even pain med."  AR 614-15.  Dr. Umugbe did not establish a care plan, instead instructing Plaintiff to follow up in three months "in case [she] wants meds at that time."  AR 615.

About seven months later in April 2017, Plaintiff obtained treatment from Interim Psychiatric Care.  AR 690.  At that time, she was taking "no meds" with a GAF score of 60.  Id.  In April 2017, she started taking Paxil (generic name paroxetine).  AR 323.  By June 2017, she had filled a prescription for an anti-anxiety medication, Vistaril (generic name atarax), but she had not yet taken it.  AR 694.  By August 31, 2017, she had taken Vistaril 2 or 3 times as needed for improved sleep.  AR 693.

In December 2017, she reported, "No problem with meds."  AR 693.  By January 2018, she reported, "No problem with meds; no anxiety or panic attacks."

---

[2] A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, [with] some meaningful interpersonal relationships." Tagger v. Astrue, 536 F. Supp. 2d 1170, 1174 n.8 (C.D. Cal. 2008).

4

AR 692. In June 2018, she reported, "No problem with Paxil [illegible]. Panic attack 2/per week." AR 692. By August 2018, however, her doctors noted, "She stopped Paxil a month ago …. Now no meds for 8 weeks." AR 691. Plaintiff reports starting a prescription for Cymbalta (generic name duloxetine) in July 2018. AR 323.

**B. Plaintiff's Physical Health.**

### 1. 2012-2015

In February 2012, Plaintiff rated her pain as zero. AR 343. By November 2015, she had some difficulty walking but no "difficulty walking 2 blocks." AR 353. She denied prior "serious illness" and "arthritis." Id. She had smoked two packs of cigarettes per day for 35 years. AR 342, 352, 380.

She had several MRIs in December 2015 for her left hip and shoulder. AR 334-338, 397. She reported left shoulder pain going back two or three years and left hip pain going back four years. AR 335, 432, 443. She reported "moderate difficulty" engaging in hobbies, sporting activities, and driving. AR 406.

### 2. 2016

Based on the MRIs and physical examinations, in January 2016 Plaintiff was diagnosed as suffering from "osteoarthritis of the left hip" and designated a "candidate for total hip replacement arthroplasty." AR 443-45. At that time, she was not taking any pain medication. AR 817.

P was diagnosed with "left shoulder rotator cuff tendonosis/tear," see AR 432, and in mid-February 2016 received an injection to treat her shoulder pain. AR 439-40. The injection reduced her pain to 2/10 (AR 434) and her pain was still 2/10 by mid-March 2016, but the effects of the injection were "wearing off." AR 430.

On April 21, 2016, she underwent an orthopedic consultative examination with Dr. Bernabe. AR 371. Plaintiff told Dr. Bernabe that her pain started "approximately 5 years ago" and that she had been "diagnosed with arthritis of the

5

left hip and left shoulder." Id. At the examination, however, she displayed a normal gait, could toe and heel walk, and had a full range of cervical and hip motion, negative straight-leg raising tests, and 5/5 motor strength. AR 374. Dr. Bernabe concluded that she could walk or stand 6 hours per day. AR 375.

By June 2016, Plaintiff's left hip pain was 6/10, and she scheduled hip replacement surgery for August. AR 498, 503-04. She also decided to proceed with left shoulder arthroscopic rotator cuff repair.[3] AR 388, 501. She was still only taking ibuprofen "as needed for pain control." AR 498.

On August 22, 2016, at a pre-operative appointment before her hip replacement, Plaintiff reported that "she is unable to bend, squat, left, dress, drive, stand, climb, or walk extensively." AR 494, 557. She had "uneventful" surgery on August 24, 2016, and she was discharged home in "stable" condition to pursue physical therapy. AR 575, 582, 675.

In September 2016, she rated her hip pain as "fair" and told doctors that she had stopped taking pain medication only eight days after the surgery. AR 674. Her doctors opined that she was "doing well." Id.

By October 2016, she was still reporting "moderate" hip pain and was prescribed pain medications, but her doctors again assessed that she was "doing well." AR 672-73. In December 2016, she continued to report left hip pain, but her motor strength had improved to 5/5. AR 669.

### 3. 2017

When Plaintiff complained of left hip pain in June 2017, her doctors recommended home exercises. AR 659. X-rays taken that day revealed a "well-positioned . . . total hip arthroplasty in excellent alignment." Id.

---

[3] Plaintiff acknowledged to her doctor that the shoulder injection had given her relief for several weeks but she was "not interested in having this repeated." AR 504.

On August 9, 2017, she underwent left shoulder arthroscopic debridement. AR 790. At her first post-operative appointment on August 21, she rated her pain as 7/10; she was taking Norco "as needed for pain control." AR 648.

By October 2017, she reported improvement to her shoulder; she had only "minor aching pain and soreness" and rated her pain as 4/10. AR 646, 792. By November 2017, she rated her shoulder pain as 3/10. AR 643, 794. By December 2017, her "chief complaint" was left hip pain with no mention of shoulder pain. AR 797.

### 4. 2018

In January 2018, Plaintiff told her doctors that "she was riding her bike and she crashed into a fence and hit her shoulder when she landed. [S]ince then she has had some increase [in] pain." AR 639. Even after the bicycle accident, she rated her shoulder pain as only 2/10. AR 638.

When she complained of new lumbar pain in April 2018, Plaintiff's doctors referred her for pain management services and physical therapy. AR 717. In June 2018, she rated her hip pain as 4/10. AR 635.

Plaintiff started pain management treatment with Dr. Rho in July 2018. AR 829. She told Dr. Rho that she experienced an average pain level of 4-7/10 and that her neck bothered her more than her hip. Id. She also reported that she "tries to garden but in very small intervals." AR 839. To treat her pain, she took "Norco prn [as needed] rarely and ibuprofen in the past"; she wanted to "avoid opioids if possible." AR 829. Dr. Rho prescribed medication used to treat arthritic pain and recommended "walking and home [exercise] program." AR 832-33.

In August and September 2018, Plaintiff rated her pain as 5-6/10. AR 827, 837. After additional physical therapy, she reported decreased pain by October 2018. AR 837.

## IV.

## DISCUSSION

### A. Summary of Plaintiff's Testimony.

Plaintiff initially claimed disability as a result of osteoarthritis and bursitis affected her left hip and left shoulder, anxiety and panic attacks, head tremors, and periodontal disease. AR 64-65.

In a Function Report dated March 14, 2016, she reported that "acute anxiety and panic attacks make [her] unable to interact with people." AR 220. Nevertheless, she lived with her family and performed homemaking chores, including caring for pets, cooking daily, sweeping, washing clothes, watering the garden, shopping, and paying bills. AR 221-23. She could "walk [her] small dog 1 time a day for 10 minutes" or "walk 1 block." AR 221, 225. She could also go out alone, drive, and use public transportation. AR 223. She identified "gardening" as a hobby, but she did it "not any more as much" because she "lost interest." AR 224.

At the September 2018 hearing, Plaintiff testified that she could not work due to "panic, and anxiety, my body condition." AR 47. She anticipated needing neck and back surgery due to degenerative joint disease. AR 47, 51-52.

Regarding her August 2016 hip replacement surgery, she testified that her left hip was "still very tender." AR 47. She explained that her hip "hurts to the touch" and when she walked, it felt like the metal was "shattering the top of my [femur] bone. And the pain goes down into my knee." AR 52. Due to pain in her heels, she testified, "When I walk, it feels like I am stepping on knives." AR 53.

Regarding her left shoulder, she testified that she had done three rounds of physical therapy, but she was still "in a lot of pain all the time." AR 47, 52.

She testified that she had neck pain "all the time, and it shoots down into my left shoulder," getting worse whenever she turned her head. AR 49. She also testified that she "always" had lower back pain, but it got worse when she walked;

she rated her back pain as 7 or 8 out of 10 when walking. AR 51. On an average day, she could only be on her feet 5 to 15 minutes before needing to sit. AR 54-55.

Regarding her anxiety, she testified that she did not drive but could take public transportation. AR 49. She had panic attacks two or three times per week, and those attacks made her "just want to stay in my house and not deal with people." AR 53-54. When she had an attack in a public place, like the bus, she would "pretend nobody is there, because I don't have a choice …." AR 54. She reported taking Vistaril to treat her anxiety. Id.

### B. Summary of the ALJ's Decision.

The ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." AR 27. As reasons supporting this conclusion, the ALJ cited (1) inconsistencies between Plaintiff's allegations and "the objective medical evidence"; (2) "contradictory statements regarding [Plaintiff's] symptoms and treatment"; (3) inconsistencies between Plaintiff's allegations and her activities; and (4) a finding that Plaintiff's "symptoms have improved or stabilized with treatment." AR 27, 29.

### C. Analysis of the ALJ's Reasons for Discounting Plaintiff's Testimony.

#### 1. Reason One: Inconsistent with Medical Evidence.

The ALJ noted Plaintiff's testimony that she has constant, disabling left shoulder pain. AR 25. The ALJ contrasted this testimony with records showing successful shoulder surgery and improved range of motion from post-operative physical therapy. AR 26, citing AR 648-49 (8/21/17 progress notes); AR 646-47 (10/4/17 progress notes: "Patient states her shoulder is improving. She reports minor aching pain … [and] denies taking any medication for pain control at this time"; she is "doing well" with "good motion in the shoulder"); AR 643-44 (11/28/17 progress notes: "patient states that the problem is better" and "pain level is a 3/10"); AR 831 (7/17/18 physical examination: "Shoulder ROM – patient is

able to touch hands above head with minimal pain").

Similarly, the ALJ noted Plaintiff's testimony that she has had constant left hip pain and contrasted it with records from after her August 2016 surgery. AR 25-26. Those records showed diminishing pain over time. AR 672-63 (10/5/16: Plaintiff reported "moderate" pain but had a normal range of hip motion in every direction except flexion); AR 669-70 (12/7/16: Plaintiff reported some groin pain and numbness; doctor observed motor strength of 5/5 and recommended home exercises with a 6-month follow up); AR 658-59 (6/7/17: Plaintiff reported hip pain, but doctor observed 5/5 motor strength and unchanged ROM, again recommending home exercises); AR 639 (1/23/18: Plaintiff was bike riding); AR 635-36 (6/13/18: Plaintiff rated her hip pain 4/10; "bursitis left hip resolved").

Finally, Plaintiff testified that when walking, she felt like her femur was shattering, felt like she was stepping on knives, and experienced back pain she rated as 7/10. AR 51-53. The ALJ contrasted this with numerous records showing that Plaintiff walked with a normal gait, both before and after her August 2016 hip replacement. AR 26, citing AR 697 (1/22/16); AR 699 (3/4/16); AR 373 (4/21/16); AR 379 (4/23/16); AR 701 (5/20/16); AR 703 (9/14/16); AR 705 (12/16/16); AR 716 (4/10/18).

All these contrasts provide substantial evidentiary support for the ALJ's conclusion that Plaintiff's symptom testimony was inconsistent with the objective medical evidence. While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

### 2. Reason Two: Contradictory Symptom and Treatment Reporting.

#### a. Panic Attacks.

Plaintiff testified that panic attacks caused her to leave her receptionist job in 2012 and that she continued to suffer from such severe anxiety that she could not

10

1  deal with people outside her house.  AR 53-54, 220.  At the September 2018
2  hearing, she reported panic attacks 2 or 3 times per week.  AR 53.

3        The ALJ contrasted this testimony with medical records showing that
4  Plaintiff did not suffer from debilitating panic attacks throughout her period of
5  claimed disability.  The ALJ cited multiple medical records showing that Plaintiff
6  was pleasant and cooperative when engaging with medical staff.  AR 27, citing AR
7  379-81 (4/23/16); AR 494 (8/22/16); AR 716 (4/10/18).  During the 2016
8  encounters, Plaintiff was not taking any medication to treat her mental illness.  AR
9  380, 690.  She began taking anti-anxiety medication in late 2017 (AR 693) and by
10  January 2018, she reported "no anxiety or panic attacks."  AR 692.  Six months
11  later in June 2018, she reported two panic attacks per week, but she also stated, "I
12  am OK," and her doctor assessed, "Cont. Current meds."  Id.  By August 2018,
13  however, her doctors noted, "She stopped Paxil a month ago …. Now no meds for
14  8 weeks."  AR 691.

15        Substantial evidence supports the ALJ's finding that Plaintiff did not
16  consistently suffer from frequent, disabling panic attacks.  While Plaintiff reported
17  feeling worried or anxious to various medical providers, she has not cited (and the
18  Court has not seen) any medical records noting that her mental health symptoms
19  caused her to miss appointments or impaired her ability to interact with medical
20  staff.  Instead, the medical evidence shows that even without treatment, Plaintiff
21  was able to interact appropriately with medical staff.  When she began taking anti-
22  anxiety medication, her panic attacks decreased to none.  When she stopped taking
23  any medication, they resumed.  The inconsistency between Plaintiff's allegations
24  and what she told her medical providers about the disabling nature of her panic
25  attacks was a clear and convincing reason for the ALJ to discount her symptom
26  testimony.

27        b.  Inability to Drive.
28        The ALJ contrasted Plaintiff's September 2018 testimony that she does not

drive (AR 49) with earlier evidence that she did drive. AR 27, citing AR 223 (4/4/16 function report); AR 199 (4/2/16 function report by husband); AR 381 (4/23/16 psychiatric evaluation).

Plaintiff argues that there is no contradiction, because while Plaintiff could drive in 2016, she could not drive in 2018. (JS at 13.)

In March 2016, Plaintiff reported to her doctors that she had "moderate" difficulty driving. AR 406. In August 2016, Plaintiff told her doctors that she was "unable" to drive. AR 494. Ultimately, Plaintiff appears to have told her doctors in 2016 that she had difficulty driving, whereas she did not tell the Commissioner that in her function report. Plaintiff's statements about driving by itself would not be a clear and convincing reason to discount Plaintiff's symptom testimony.

### 3. Reason Three: Inconsistent with Activities.

The ALJ observed that Plaintiff's pain testimony was inconsistent with gardening as a hobby and exercising by daily walking. AR 27.

In January 2016, Plaintiff completed a medical history questionnaire indicating that she exercised regularly by walking daily for about 20 minutes. AR 818, 820. In March 2016, she reported walking 10 minutes per day. AR 221. In January 2018, she was able to ride a bike. AR 639. These reported activities are inconsistent with Plaintiff's extreme hearing testimony, i.e., that whenever she walks, she experiences 7/10 pain and feels like her femur is shattering and she is stepping on knives. AR 51-53. Substantial evidence supports the ALJ's finding that Plaintiff exaggerated the degree to which her walking ability is limited by pain.[4]

---

[4] Plaintiff contends that the ALJ needed to show that Plaintiff's testimony was inconsistent with an ability to walk for a "substantial part" of her day. (See JS at 10-11.) Daily activities can demonstrate that a claimant's subjective complaints are exaggerated, even if those daily activities do not by themselves suggest an ability to work full-time. See Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir.

12

In April 2016, Plaintiff reported "gardening" as a hobby. AR 380. In July 2018, she reported that she "tries to garden but in very small intervals." AR 839. Plaintiff argues that the ALJ's finding of inconsistency is unsupported because the ALJ never asked how she gardened. (JS at 10.) Even in small intervals, gardening requires walking and kneeling or stooping. Again, Plaintiff's symptom testimony was so extreme (i.e., that she cannot walk or turn her head without severe pain), the ALJ could reasonably find it inconsistent with regularly performing even limited gardening.

Regarding Plaintiff's anxiety, the ALJ found that it caused only mild functional limitations. AR 22. As support, the ALJ cited Plaintiff's ability to "perform household chores, run errands, shop, and cook," as well as her ability to use public transportation. AR 22-23. The ALJ also noted that Plaintiff had looked for other work. AR 25. Plaintiff's ability to shop, run errands, and ride the bus is inconsistent with her testimony that her anxiety renders her unable to deal with people. She admitted that she is able to persist through panic attacks when sufficiently motivated, such as taking the bus to medical appointments. AR 54. The ALJ cited activities showing that the functional limitations caused by Plaintiff's anxiety are not as severe as Plaintiff alleged.

### 4. Reason Four: Improvement with Treatment.

The ALJ summarized treating records for Plaintiff's left shoulder and left hip, noting post-surgical improvements. AR 25-26. The ALJ also summarized treating records for Plaintiff's anxiety. AR 27. The ALJ concluded, "The claimant's symptoms have improved or stabilized with treatment." AR 29.

Substantial evidence supports the ALJ's conclusion. Per the medical records summarized above, Plaintiff's shoulder and hip pain improved after surgery, notwithstanding her reluctance to take pain medication. While Plaintiff argues that

---

2009).

13

her pain returned (JS at 8), she cites no evidence undermining the ALJ's conclusion that her pain, if managed with medication, would prevent her from doing light work.[5]  Similarly, Plaintiff's panic attacks decreased when she began taking anti-anxiety medication.  See Nathan v. Colvin, 551 F. App'x 404, 407-08 (9th Cir. 2014) (finding no error where ALJ did not incorporate claims of chronic pain, because claimant did not provide evidence "to refute the conclusion that the pain could be managed with proper medication").

## V.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner.

DATED:  September 16, 2020

　　　　　　　　　　　　　　　　　　／s／ Karen E. Scott
KAREN E. SCOTT
United States Magistrate Judge

---

[5] Plaintiff also criticizes the ALJ for relying on medical opinions by doctors who did not consider Plaintiff's shoulder surgery or 2018 complaints of hip pain. (See JS at 7.)  The ALJ considered both her shoulder surgery and her 2018 complaints.  Furthermore, the ALJ assessed greater limitations than those assessed by these physicians out of "an abundance of caution . . . in consideration of records received through hearing level and [Plaintiff's] testimony."  AR 28.

14